**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **SHELLY AVERSMAN,** | ) |
| **MATTHEW AVERSMAN,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Case No. 16-CV-2779-CM** |
| | ) |
| **CHRISTOPHER NICHOLSON,** *et al.,* | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CHRISTOPHER NICHOLSON**

Shelly and Matthew Aversman bring this action against the Kansas Bureau of Investigation, Special Agent Christopher M. Nicholson, and Special Agent in Charge William Smith. The Aversmans allege Nicholson omitted information from and made misrepresentations in a probable cause affidavit that ultimately resulted in Shelly's arrest for unlawful sexual relations pursuant to K.S.A. 21-5512(a)(9). Nicholson respectfully requests this Court to dismiss this action against him in its entirety.

**I.       Motion to Dismiss Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This Court does not accept the Aversmans' legal conclusions as true, however; such conclusions must be supported by facts. *Iqbal*, 556 U.S. at 678.

## II.    <u>Qualified Immunity Standard</u>

"'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Savannah v. Collins*, 547 Fed. Appx. 874, 876 (10th Cir. 2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). In order to survive a motion to dismiss based on qualified immunity, the Aversmans "'must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of the violation.'" *Savannah*, 547 Fed. Appx. at 876 (quoting *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012)).

"Once the qualified immunity defense is asserted, the plaintiff 'bears a heavy two-part burden' to show, first, 'the defendant's actions violated a constitutional or statutory right,' and, second, that the right was 'clearly established at the time of the conduct at issue.'" *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001). Because this protection is intended to shield officials even from pretrial burdens such as discovery, courts should resolve the question of law raised by a qualified immunity defense at the earliest stage possible. *Medina*, 252 F.3d at 1127-28.

## III.    <u>Shelly's Malicious Prosecution Allegations Fail to Establish Key Elements.</u>

In the Tenth Circuit, a claim under § 1983 for malicious prosecution under the Fourth Amendment includes five elements:    "'(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the

defendant acted with malice; and (5) the plaintiff sustained damages.'" *Jackson v. Hogan*, ___ Fed. Appx. ___, ___, No. 16-6042, 2016 WL 7118318, at *3 (10th Cir. Dec. 7, 2016); *see also Teets*, 2003 WL 1565936, at *8 ("A § 1983 claim based on lack of probable cause to arrest and/or prosecute is not cognizable under the 14th Amendment. Such claims are appropriately brought under a § 1983 claim for violation of a Fourth Amendment right and are analyzed as such."). Ultimately, in addition to these elements, Shelly must establish a constitutional violation occurred. *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996). As discussed in further detail below, Shelly's allegations are insufficient to meet three key elements of her claim:  the original action here was not terminated in Shelly's favor, her arrest was supported by probable cause, and Nicholson did not act with malice.

### A.   The Original Action Here was Not Terminated in Shelly's Favor.

Malicious prosecution claims are disfavored at common law, and as such, a standard feature of such a claim is that the charges have been dismissed in a manner indicative of innocence. *Cordova v. City of Albuquerque*, 816 F.3d 645, 653 (10th Cir. 2016). This element of a § 1983 malicious prosecution claim requires Shelly to "show more than just the withdrawal or vacating of criminal charges." *M.G. v. Young*, 826 F.3d 1259, 1262 (10th Cir. 2016). "'Where the case is disposed of in a manner that leaves the question of the accused's innocence unresolved, there generally can be no malicious prosecution claim by the accused.'" *M.G.*, 826 F.3d at 1262. To decide whether Shelly has met her burden of demonstrating a favorable termination, this Court looks to "the stated reasons for the dismissal [of the criminal proceedings] as well as the circumstances surrounding it in an attempt to determine whether the dismissal indicates [Plaintiffs'] innocence." *M.G.*, 826 F.3d at 1263. "[T]he mere fact that a prosecutor had chosen to abandon a case [is] insufficient to show favorable termination." *Cordova*, 816 F.3d at 651.

Here, the Atchison County Attorney's dismissal of the charges does not indicate Shelly's innocence. In particular, this Court can take judicial notice of the Journal Entry of Dismissal filed in Atchison County District Court Case No. 2015-CR-305 on March 14, 2016, which specifies that the matter was dismissed without prejudice. Because the dismissal is integral to Shelly's claims, this Court can consider the Journal Entry of Dismissal without converting this motion to a motion for summary judgment. *See, e.g., GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."). The dismissal without prejudice here does not constitute a favorable termination, as it was not dismissed with prejudice and charges can be re-filed. *See, e.g., Manbeck v. Micka*, 640 F. Supp. 2d 351 (S.D.N.Y. 2009) (noting a voluntary dismissal of criminal charges without prejudice does not satisfy the favorable termination element of a malicious prosecution claim absent some indication that the withdrawal was intended as a formal abandonment of the proceedings). Shelly's innocence was left unresolved by the prosecutor's dismissal without prejudice. At this point, it is still possible for Shelly to be tried in this matter. Because Shelly cannot establish an essential element of her claim, this Court should dismiss this claim against Nicholson.

### B.  *Probable Cause Supported Shelly's Arrest.*

In addition to Shelly's malicious prosecution claims brought under § 1983 and state law, this section relating to whether probable cause existed to arrest applies to all of the Aversmans' claims predicated on the alleged misrepresentations and omissions in the probable cause affidavit. *See, e.g., Puller v. Baca*, 781 F.3d 1190, 1196-97 (10th Cir. 2015) (finding most of plaintiff's

claims, including those for malicious prosecution and substantive due process, required the court to consider whether there was probable cause to arrest); *Kerns v. Bader*, 663 F.3d 1173, 1187 (10th Cir. 2011) (noting plaintiff's false arrest, false imprisonment, and malicious prosecution claims all require plaintiff to establish his arrest and detention were without probable cause); *Becker v. Kroll*, 494 F.3d 904, 913 (10th Cir. 2007) (addressing malicious prosecution, procedural due process, and substantive due process claims together because all amounted to the claim that the plaintiff was investigated and prosecuted without probable cause); *see also Teets v. Bd. of Cnty. Comm'rs of Cnty. of Osage*, No. 02-4060-JAR, 2003 WL 1565936, at *8 (D. Kan. Mar. 24, 2003) (claim for false arrest requires plaintiff to show restraint of liberty without probable cause). Thus, Shelly's claims for malicious prosecution, false arrest, and substantive due process (Counts I, II, III, and V) along with their state-law counterparts (Counts VI for malicious prosecution, VII for false arrest, VIII for abuse of process, IX for false imprisonment, XI for negligence, and XII for negligent and intentional infliction of emotional distress) fail.

"The substance of probable cause is a 'reasonable ground for belief of guilt.'" *McCarty v. Gilchrist*, 646 F.3d 1281, 1286 (10th Cir. 2011). "Probable cause exists if the facts and circumstances are sufficient to warrant a person of reasonable caution to believe a crime has been committed." *McCarty*, 646 F.3d at 1286. To make such a determination, this Court looks at the "'facts and circumstances as they appeared to defendant at the time the prosecution was commenced.'" *Vanover v. Cook*, 260 F.3d 1182, 1190 (10th Cir. 2001). Probable cause does not require proof beyond a reasonable doubt, nor does it even require the suspect's guilt to be more likely true than false. *Puller*, 781 F.3d at 1200; *Kerns*, 663 F.3d at 1188.

"Affiants seeking arrest warrants violate the Fourth Amendment when they knowingly, or with reckless disregard for the truth, include false statements in an affidavit, or knowingly and recklessly omit from it information which, if included, would vitiate probable cause. [Citation omitted.] In such a situation, we measure probable cause by (1) removing any false information from the affidavit, (2) including any omitted material information, and then (3) inquiring whether the modified affidavit establishes probable cause for the warrant." *Puller*, 781 F.3d at 1197.

In addressing whether Nicholson violated clearly established law, the second element of the qualified immunity inquiry, this Court asks whether there was "arguable probable cause" to support the challenged conduct, *i.e.*, whether Nicholson's conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists. *Jackson*, ___ Fed. Appx. at ___, 2016 WL 7118318, at * 3. The affidavit need only to establish something more than a bare suspicion that Shelly committed unlawful sexual relations. *Puller*, 781 F.3d at 1200.

Shelly alleges Nicholson's affidavit lacked probable cause because it:  (1) contained false information in that Jordan Jolly and Shelly admitted sexual contact occurred while Jolly was a student and Shelly was a teacher and (2) failed to include statements from Jolly and Shelly denying any sexual contact occurred while Jolly was a student and Shelly was a teacher. (Doc. 6, at 13.)

This Court thus begins by removing any false information. Shelly takes issue with Nicholson's use of the word "admitted" in the probable cause affidavit, contending that instead Shelly stated "maybe" followed by "probably" in response to Nicholson's statement to Shelly that Jolly had admitted they had sexual contact while Jolly was a student. (Doc. 6, at 4-5.) Shelly also alleges in response to a question by Nicholson regarding some of the sexual contact occurring prior to him graduating and going to college, Jolly stated "Yeah, like I said" before being interrupted. (Doc. 6, at 4.) When Nicholson told Shelly that Jolly had estimated the sexual contact began in January of Jolly's senior year, Shelly responded "Probably. I was thinking it was long after that." followed by "I guess so." (Doc. 6, at 6.) Shelly now contends that while Shelly's "I guess so"

statement "could certainly imply an admission," her statements of doubt were enough to make the use of the word "admitted" false. (Doc. 6, at 10.)

Notably, like in *Puller*, this case illustrates the limits of language. See 781 F.3d at 1197. There, the plaintiff asserted that the detective had falsified the affidavit by stating the plaintiff "took part in an initial attack" as opposed to "approached" the victim. *Puller*, 781 F.3d at 1197. The Tenth Circuit, in noting the limits on language, stated it understood the phrase to reasonably mean being part of the mob that collectively attacked the victim, which would be sufficient to establish probable cause. *Puller*, 781 F.3d at 1197. Further, regardless of whether the detective went too far with the language used, the use of "approached" would have been sufficient for probable cause also. *Puller*, 781 F.3d at 1197. Like in *Puller*, Shelly quibbles with the language used in stating that Jolly and Shelly admitted sexual contact occurred while Jolly was a student and Shelly a teacher. But even if Shelly's preferred language had been used—"Probably. I was thinking it was long after that" and "I guess so"—that the sexual contact began in January of Jolly's senior year, this language would have been sufficient for probable cause to believe that Shelly, as a teacher, engaged in unlawful sexual relations with a student pursuant to K.S.A. 21-5512(a)(9).

This Court then adds any omitted material information. Shelly contends the statements of doubt mentioned above should have been added in addition to Jolly's and Shelly's alleged repeated denials that sexual conduct occurred while Jolly was still a student. (Doc. 6, at 10.)

Again, *Puller* is instructive. There, the plaintiff asserted the detective intentionally omitted a witness's ambiguous assertion denying that plaintiff was involved in the fight. *Puller*, 781 F.3d at 1197. The court first noted that the detective's omission appeared, at worst, negligent, and thus did not meet the standard of knowingly or with reckless disregard for the truth. *Puller*, 781 F.3d at 1197. "Further, Parker's statement is not an unequivocal denial of Puller's presence. When she

7

says 'nah, nah, his grandma would kill him,' she seems to be surmising rather than giving a definitive answer about Puller's involvement. Even if Parker had unequivocally stated that Puller was not involved in the 'fight,' that would not undermine Woods-King's statement that Puller had been part of the group that approached the victim." *Puller*, 781 F.3d at 1198.

Even after the allegedly false information is substituted as requested above and omitted material information added here, though, the modified affidavit still establishes probable cause for the warrant. A large part of Shelly's objections to her arrest is simply her insistence that her self-interested contrary version of events should have been credited. As the Tenth Circuit noted in *Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006), "as a general matter, a suspect's contradiction of a witness' accusation is not sufficient to vitiate probable cause; otherwise it would be virtually impossible to secure a warrant for anyone but a confessed offender." Here, like in *Grubbs*, there is nothing compellingly credible or uniquely exculpatory about Shelly's denials to afford them any exceptional significance in this case. 445 F.3d at 1278-79 (noting that "Such disputes between accuser and accused are unremarkable in a criminal law setting"). The alleged omissions—such as Shelly's denial that sexual contact occurred while Jolly was a student—are by no means exculpatory when placed in context with Shelly's qualified answers regarding the timeline. Because even the modified affidavit establishes probable cause, Shelly's claims for malicious prosecution, false arrest, and substantive due process (Counts I, II, III, and IV) along with their state-law counterparts (Counts VI for malicious prosecution, VII for false arrest, VIII for abuse of process, IX for false imprisonment, XI for negligence, and XII for negligent and intentional infliction of emotional distress) fail. *Puller*, 781 F.3d at 1200. Nicholson is entitled to qualified immunity on all of Shelly's claims that depend upon a lack of probable cause.

### C. Nicholson Did Not Act with Malice.

Shelly contends that Nicholson acted knowingly or with reckless disregard for the truth when he used false information in, and omitted information from, the probable cause affidavit. (Doc. 6, at 13.) Aside from this conclusory statement, however, Shelly fails to provide any facts to suggest any knowledge or reckless disregard for the truth on Nicholson's behalf. Shelly's blanket, conclusory allegations of malice do not suffice to avoid dismissal under *Iqbal*. *See also Teets*, 2003 WL 1565936, at *3 (finding plaintiff's mere blanket allegations that prosecutor took an interest in plaintiff's divorce proceedings and thus was acting out of malice in filing charges insufficient to overcome summary judgment).

Even further, Shelly's own allegations belie any claims of knowledge or reckless disregard for the truth. Shelly alleges, for example, that Nicholson changed Shelly's statements from "Probably. I was thinking it was long after that" to "admitted" in order to be concise within the affidavit. (Doc. 6, at 11.) Such allegations are insufficient to say Nicholson acted with malice.

### IV. Shelly's Substantive Due Process Claim Has Been Rejected by the Supreme Court.

In Count III, Shelly alleges Nicholson violated her substantive due process rights by allegedly including misleading statements in and omitting exculpatory statements from the probable cause affidavit. (Doc. 6, at 15.) Courts have held, however, that claims such as Shelly's— where the allegations relate to an alleged wrongful arrest—do not fall within the substantive due process protections of the Fourteenth Amendment.

"In *Albright [v. Oliver*, 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994)], the Court specifically rejected the plaintiff's claim that his groundless arrest violated substantive due process rights by depriving him of a '"liberty interest" to be free from criminal prosecution except upon probable cause.'" *Becker*, 494 F.3d at 918. As the Tenth Circuit previously noted in *Becker*, "the

unavoidable construction of *Albright* is that no § 1983 claim will arise from filing criminal charges without probable cause under the substantive due process protections of the Fourteenth Amendment." 494 F.3d at 918. "In *Albright*, the Court specifically rejected the plaintiff's claim that his groundless arrest violated substantive due process rights by depriving him of a '"liberty interest" to be free from criminal prosecution except upon probable cause.'" *Becker*, 494 F.3d at 918. Rather, the Fourth Amendment protects liberty interests in the initial stages of a criminal proceeding; as such, "[t]he more general due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically addressed by the Fourth Amendment in this context." *Becker*, 494 F.3d at 919.

This Court should dismiss Shelly's claim for substantive due process (Count III).

### V.    Matthew Has No Constitutional Right to Spousal Consortium, and No Intent to Interfere with his Relationship Existed.

In Count V, Matthew alleges Nicholson and Smith undermined his "First and Fourteenth Amendment and state law liberty interest in preserving the integrity and stability of the family relationship from intervention by the state without due process of law." (Doc. 6, at 17.) He titles the claim as a "Pendent loss of Association Claim" and through it seeks damages for loss of consortium and loss of household services, among other things. (Doc. 6, at 17.) Matthew's derivative claim is precluded by Tenth Circuit precedent, however.

"Section 1983 does not generally impose liability for the violation of a duty of care arising solely out of tort law." *Winton v. Bd. of Comm'rs of Tulsa Cnty., Okla.*, 88 F. Supp. 2d 1247, 1254 (N.D. Okla. 2000). "It is a 'well-settled principle that a section 1983 claim must be based upon the violation of [a] plaintiff's personal rights, and not the rights of someone else.'" *Winton*, 88 F. Supp. 2d at 1254. There is no constitutional right to spousal consortium. *Winton*, 88 F. Supp. 2d at 1254. Deprivations of the lesser services comprehended within "consortium" are not deprivations of

liberty within the restricted constitutional meaning of the term. *Winton*, 88 F. Supp. 2d at 1254. In order to allege a § 1983 claim, Matthew must demonstrate that he personally suffered the deprivation of a constitutional right he individually possesses. *Winton*, 88 F. Supp. 2d at 1254. Matthew's claim appears to be based on the violation of his wife's individual rights. To such extent, it is barred.

To the extent Matthew's claim is liberally interpreted to be akin to a claim alleging deprivation of his right to familial association with Shelly, his spouse, it still fails, and Nicholson is entitled to qualified immunity on Matthew's claim. (Doc. 6, at 17.)

"The right of intimate association is not absolute." *Griffin v. Strong*, 983 F.2d 1544, 1549 (10th Cir. 1993). The right to familial association "is properly based on the 'concept of liberty in the Fourteenth Amendment.'" *Griffin*, 983 F.2d at 1547. "In classic fourteenth amendment liberty analysis, a determination that a party's constitutional rights have been violated requires 'a balancing [of] liberty interests against the relevant state interests.'" *Griffin*, 983 F.2d at 1547. To determine whether Matthew's familial association right has been violated as alleged, this Court weighs the state's interests in investigating reports of unlawful sexual relations such as relations between a teacher and a student, which is the interest served by Nicholson's alleged conduct in investigating the claims against Shelly, and Matthew's interests in his familial right of association. *Griffin*, 983 F.2d at 1547. In weighing these interests, this Court looks to determine whether Nicholson's alleged conduct constituted an undue burden on Matthew's associational right.

In *Lowery v. County of Riley*, 522 F.3d 1086, 1092 (10th Cir. 2008), the Tenth Circuit noted it has held that "'an allegation of *intent* to interfere with a particular relationship protected by the freedom of familial association is required to state a claim under section 1983.'" Notably, "[n]ot every statement or act that *results* in an interference with the rights of familial association is

actionable. Rather, to rise to the level of a constitutional claim, the defendant must *direct* his or her statements or conduct at the intimate relationship with knowledge that the statements or conduct will adversely affect that relationship." *Griffin*, 983 F.2d at 1548 (emphasis in original); *see also Lowery*, 522 F.3d at 1092.

Here, Matthew alleges no facts, much less even a conclusory allegation, to support that Nicholson's conduct was directed at his familial relationship with knowledge that the statements or conduct would adversely affect that relationship. Thus, Matthew alleges no facts that Nicholson intended to interfere with his relationship with Shelly, a requisite under Tenth Circuit precedent in order to state a claim. Because he has failed to allege such necessary facts, this Court must dismiss his claim in Count V.

Even further, were this Court to balance Matthew's allegations with the important state interests at play here, Nicholson is entitled to qualified immunity. In *Griffin*, a wife sued a police officer under 42 U.S.C. § 1983 alleging deprivation of her right to familial association arising out of the investigation and arrest of her husband on charges of rape and sexual abuse of a child. 983 F.2d at 1545. There, the record supported the wife's allegation that the officer told the wife, falsely, that her husband had confessed to child abuse and would be provided an attorney when he got to jail. *Griffin*, 983 F.2d at 1548. The wife also testified that the officer questioned her morals when she did not believe her husband committed child abuse. *Griffin*, 983 F.2d at 1548. The officer also interviewed the husband in jail; during the interview, the husband confessed to abusing several young girls. *Griffin*, 983 F.2d at 1548. The husband testified that the officer, after asking if the husband had heard from his wife, said "'the reason she feels this way is because you won't confess to what you've done and get the help you need.'" *Griffin*, 983 F.2d at 1548. After the husband's arrest, the wife discussed her plans to move to another state while visiting the officer at his office.

*Griffin*, 983 F.2d at 1548. The wife testified that the officer told her "'to go ahead and start my life over. It was a good idea.'" *Griffin*, 983 F.2d at 1548. The wife also said the officer used her against her husband. *Griffin*, 983 F.2d at 1548.

Ultimately, the Tenth Circuit found "no reasonable juror, when confronted with balancing the interests on the record before us under the appropriate standard, could determine that [the wife's] associational rights were unduly violated." *Griffin*, 983 F.2d at 1549. Noting that both the wife and husband consensually talked to the officer, the court stated, "Consensual interviews are less likely to infringe on familial relationships because the parties can always decline to talk." *Griffin*, 983 F.2d at 1548. Additionally, the court found no evidence or allegation that the conduct going to the wife's claims for deprivation of her familial right of association involved physical coercion or conduct that shocked the conscience. *Griffin*, 983 F.2d at 1548-49. While the court noted that the officer apparently lied to the wife by telling her that her husband had confessed to the crimes with which he was being charged, the court concluded on the balance that the infringement of familial rights of association was slight. *Griffin*, 983 F.2d at 1549.

Here, Matthew has failed to allege sufficient facts that show—when taken as true—that Nicholson plausibly violated his constitutional rights, which were clearly established at the time of the violation. Even if Matthew had stated a claim for relief, Nicholson is entitled to qualified immunity. This Court should dismiss Matthew's claim against Nicholson.

## VI.    **The Public Duty Doctrine Bars Shelly's Claims Against Nicholson.**

"Actionable negligence must be based on a duty owed the plaintiff by the defendant." *Robertson v. City of Topeka*, 231 Kan. 358, 363, 644 P.2d 458 (1982). In her negligence claim, for example, Shelly simply alleges Nicholson owed her a duty. (Doc. 6, at 20.) Shelly's state tort claims against Nicholson here fail due to lack of duty.

As a law enforcement officer, Nicholson's duty is owed to the public at large. *Robertson*, 231 Kan. at 363 (duty to preserve the peace owed to public at large); see *Allen v. Bd. of Comm'rs of County of Wyandotte*, 773 F. Supp. 1442, 1453 (D. Kan. 1991) ("Law enforcement officers owe a duty to the public at large to use reasonable and ordinary care and diligence in exercising their duties, to use their best judgment, and to exercise that reasonable degree of learning, skill and experience which is ordinarily possessed by other law enforcement officers in the same or similar locations."); *see also McCormick v. Bd. of County Comm'rs of Shawnee Cnty.*, 272 Kan. 627, 648, 35 P.3d 815 (2001) (law enforcement officials owe legal duty only to the public at large).

Nicholson's duty is not owed to Shelly as a particular individual. *Robertson*, 231 Kan. at 363. "Absent some special relationship with or specific duty owed an individual, liability will not lie for damages." *Robertson*, 231 Kan. at 363; *see also McCormick*, 272 Kan. at 648. Shelly fails to allege any special relationship or specific duty owed beyond the duty Nicholson has as a law enforcement officer to preserve the peace, nor does such a special relationship or specific duty exist in the case at bar. As such, Shelly's claims resting upon a duty fail.

In *McCormick*, the Kansas Supreme Court stated that, "A law enforcement officer swearing out an affidavit for use by a magistrate at a probable cause hearing owes a duty of good faith to the judicial office. Therefore, although the public duty doctrine would not seem to shield the prosecutor under the holding in *Kalina* [*v. Fletcher*, 522 U.S. 118, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997)], in the absence of malice, Long owes a special duty only to the court, not to McCormick." 272 Kan. at 650. As discussed above, Shelly's allegations are insufficient to establish malice, and her allegations regarding duty fail due to the lack of a special relationship or specific duty beyond one owed to society at large by Nicholson. Shelly's state-law tort claims must be dismissed against Nicholson.

**VII.**   **KTCA Immunities Bar Shelly's State Tort Claims.**

Shelly brings state-law claims for relief for malicious prosecution, false arrest, abuse of process, false imprisonment, negligence, negligent and intentional infliction of emotional distress, defamation, false light/invasion of privacy, and publicity given to private life against Nicholson (Counts VI, VII, VIII, IX, XI, XII, XIII, XIV, XV). All such tort claims are barred by immunities under the Kansas Tort Claims Act (KTCA). *See, e.g., Teets*, 2003 WL 1565936, at *7 (finding KTCA was implicated on state claims for false arrest and false imprisonment).

The KTCA, K.S.A. 75-6101 et seq., "provides that a governmental entity can be found liable for the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment only if (1) a private person could be liable under the same circumstances and (2) no statutory exception to liability applies." *Keiswetter v. State*, 304 Kan. 362, Syl. ¶ 2, 373 P.3d 803 (2016); *see also* K.S.A. 2015 Supp. 75-6103(a). While officers who act maliciously or wantonly fail to exercise the care and diligence required of officers are not covered within the KTCA, the totality of the circumstances is considered in determining whether an officer's conduct is protected by the KTCA. *Allen*, 773 F. Supp. at 1453. Recently, in *Keiswetter*, the Kansas Supreme Court stressed that immunity is an immunity from suit and should be resolved at the earliest stage possible in litigation. *Keiswetter*, 304 Kan. at 367.

Exclusions from the KTCA provide immunity here. *Carpenter v. Johnson*, 231 Kan. 783, 786, 649 P.2d 400 (1982) ("An exception written into a tort claims act constitutes a jurisdictional bar, if established."). As such, even assuming some sort of duty existed here, immunity disposes of this case. *Keiswetter*, 304 Kan. at 367 ("for the sake of a straightforward review we will assume, but not decide, that a duty—here, to Keiswetter—existed. . . . So we need only determine whether the State's claimed statutory exception to liability, *i.e.*, the police protection exception, applies. If

15

the exception applies, it disposes of this case."). Subsections (c) and (e) of K.S.A. 2015 Supp. 75-6104 are particularly relevant here.

### A.  Subsection (c):  Immunity for Enforcement of a Law

K.S.A. 2015 Supp. 75-6104(c) provides that a governmental entity shall not be liable for damages resulting from "enforcement of or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, rule and regulation, ordinance or resolution."

In the instant action, Nicholson investigated and ultimately arrested Shelly pursuant to K.S.A. 21-5512(a)(9). Nicholson was enforcing a Kansas statute. He is protected by immunity under K.S.A. 2015 Supp. 75-6104(c). *See, e.g., Allen*, 773 F. Supp. at 1454-55 (concluding sheriff's department was enforcing state law by placing plaintiff in custody pursuant to Kansas statutory law and was therefore immune from liability on false imprisonment and negligence claims).

### B.  Subsection (e):  Discretionary Function Immunity

K.S.A. 2015 Supp. 75-6104(e) provides that a governmental entity shall not be liable for damages from "any claim based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." This exception is not confined to decisions made at an executive level, but rather it can encompass choices made by nonsupervisory personnel, such as tactical decisions made by police officers acting in the field. *Estate of Belden v. Brown*, 46 Kan. App. 2d 247, 291, 261 P.3d 943 (2011). The test for applying the discretionary function exception looks to the nature and quality of the discretion exercised. *McCormick*, 272 Kan. at 645-46.

"Discretion implies the exercise of discriminating judgment within the bounds of reason. [Citation omitted.] It involves the choice of exercising of the will, of determination made between competing and sometimes conflicting considerations. Discretion imparts that a choice of action is determined, and that action should be taken with reason and good conscience in the interest of protecting the rights of all parties and serving the ends of justice." *Allen*, 773 F. Supp. at 1454.

In *McCormick*, the Kansas Supreme Court addressed KTCA immunity relating to an assistant district attorney for signing a probable cause affidavit and filing a criminal complaint. There, the Court found it "must ultimately decide if the legislature intended to impose upon law enforcement officers the affirmative obligation of ascertaining the truth of all facts contained in summarized statements when swearing out a probable cause affidavit." *McCormick*, 272 Kan. at 646. Ultimately, the Court determined that the function performed in summarizing police reports in the form of a probable cause affidavit was a discretionary duty within the scope of the assistant district attorney's employment such that it was protected by discretionary function immunity.

Similarly, in *Mendoza v. Reno County*, 235 Kan. 692, 694, 681 P.2d 676 (1984), a false arrest case, the Kansas Supreme Court held that a police officer's warrantless arrest of a suspect was a discretionary function immune from liability under the KTCA. As it pertains to police officers, the Court stated:

"'It would be virtually impossible for police departments to establish specific guidelines designed to anticipate every situation an officer might encounter in the course of his work. Absent such guidelines, police officers should be vested with the necessary discretionary authority to act in a manner which they deem appropriate without the threat of potentially large tort judgments against the city, if not against the officers personally.'" *Mendoza*, 235 Kan. at 694 (quoting *Robertson*, 231 Kan. at 362).

Likewise, Agent Nicholson necessarily exercised his discretion in deciding what evidence was to be included within the affidavit to submit to the judicial tribunal. *See, e.g., Teets*, 2003 WL 1565936, at \*6-\*8 (applying discretionary immunity on malicious prosecution, false arrest, and false imprisonment claims).

## VIII.   Shelly's Abuse of Process Claim is not Cognizable.

"To state a claim for abuse of process, Plaintiff must show both an ulterior motive on the part of the Defendants and an improper act in the regular prosecution of the case." *Teets*, 2003 WL 1565936, at \*6; *Vanover*, 260 F.3d at 1191 (abuse of process claim requires an illegal, improper, perverted use of the process, that defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process, and damage resulted to plaintiff from the irregularity). In *Vanover*, the Tenth Circuit clarified the difference between an action for malicious prosecution and abuse of process:

> "An action for malicious prosecution of a civil suit differs from an action for damages for abuse of process. In abuse of process it is said the gist of the tort is not commencing an action or causing process to issue without justification, but misusing or misapplying process justified in itself, for an end other than that which it was designed to accomplish." 260 F.3d at 1191.

Even taking Shelly's allegations as true, it is not enough for Shelly to show that Nicholson caused process to issue against her with some form of malice, as she alleges. *Teets*, 2003 WL 1565936, at \*6. She needs to also show that the process was abused:  even if Nicholson submitted the probable cause affidavit purely out of spite, as alleged (Doc. 6, at 18), "there is no abuse of process claim unless he committed an improper act during the prosecution of the claim." *Teets*, 2003 WL 1565936, at \*6. "An abuse of process claim can only occur after a proceeding is filed." *Teets*, 2003 WL 1565936, at \*7 (finding abuse of process claim not cognizable where plaintiff failed to allege any facts to suggest law enforcement officer had any involvement after criminal complaint was filed). Shelly fails to state such a claim; her allegations are nothing more than a repeat of her malicious prosecution claim. Because she fails to state a claim for improper use of process after process was issued, this Court should dismiss her abuse of process claim (Count VIII).

IX.     **Shelly's Negligent Infliction of Emotional Distress Claim Fails for Lack of a Physical Injury.**

In Count XII, Shelly purports to make a claim for negligent infliction of emotional distress against Nicholson. She contends she suffered and continues to suffer extreme and severe mental distress along with "the immediate physical injuries and other injuries and damages set forth above." (Doc. 6, at 20.) Earlier in her First Amended Complaint, Shelly alleges she has suffered emotional distress, "including mental anguish, pain and suffering, humiliation, and extreme fear." (Doc. 6, at 13.)

"There is no recovery for negligent infliction of emotional distress under Kansas law unless the defendant's negligence is accompanied by or results in physical injury to the plaintiff." *Gilliam v. USD No. 244 Sch. Dist.*, 397 F. Supp. 2d 1282, 1291-92 (D. Kan. 2005). Kansas law requires the physical injury to be contemporaneous with or shortly after the incident causing the emotional distress. *Gilliam*, 397 F. Supp. 2d at 1292. In *Gilliam*, the district court found plaintiff's allegations that she suffered from "extreme mental, emotional, and physical injuries in the form of nausea, insomnia, nightmares, vomiting, difficulty eating, crying, fatigue, pain, stomach pain, diarrhea, muscle pain, depression, and suicidal thoughts" to be "generalized physical symptoms" that failed to satisfy Kansas' physical injury rule. 397 F. Supp. 2d at 1292 (collecting Kansas cases). Likewise, here, Shelly's complaints are generalized physical symptoms that fail to satisfy the physical injury rule under Kansas law. As such, her claim must be dismissed.

X.      **Nicholson's Conduct was Not Sufficiently Extreme and Outrageous.**

Also in Count XII, Shelly purports to bring a claim for intentional infliction of emotional distress. (Doc. 6, at 20.) To establish this tort, also known as outrage, "a plaintiff must prove that the defendant committed intentional or reckless conduct which was so extreme and outrageous as to be regarded as utterly atrocious or intolerable in a civilized society and which caused the plaintiff

extreme and severe mental distress." *Lovitt ex rel. Bahr v. Bd. of Cnty. Comm'rs of Shawnee Cnty.*, 43 Kan. App. 2d 4, Syl. ¶ 7, 221 P.3d 107 (2009).

Nicholson's alleged actions here did not amount to an extraordinary transgression of the bounds of decency so as to give rise to an intentional infliction of emotional distress claim for the reasons set forth above. *See Harte v. Bd. of Comm'rs of Cnty. of Johnson Cnty.*, 151 F. Supp. 3d 1168, 1197 (D. Kan. 2015). Nicholson is entitled to dismissal of this claim.

**XI.    Nicholson's Statements are Absolutely Privileged; Shelly's Defamation, False Light/Invasion of Privacy, and Publicity Given to Private Life Claims Fail.**

In Counts XIII, XIV, and XV, Shelly asserts Nicholson defamed her, placed her in a false light and invaded her privacy, and gave publicity to her private life. (Doc. 6, at 20-22.) Shelly's allegations in these three counts relate to Nicholson's use of "false and defamatory statements" within the probable cause affidavit, which is a public document and was submitted to the judge. (Doc. 6, at 20-22.)

The elements of defamation, which includes both libel and slander, "include false and defamatory words communicated to a third person which result in harm to the reputation of the person defamed." *Dominguez v. Davidson*, 266 Kan. 926, Syl. ¶ 3, 974 P.2d 112 (1999). The elements of false light invasion of privacy, which is one of the four types of invasion of privacy, include "(1) publication of some kind must be made to a third party; (2) the publication must falsely represent the person; and (3) that representation must be highly offensive to a reasonable person." *Dominguez*, 266 Kan. 926, Syl. ¶ 7. The difference between a false light invasion of privacy action and a defamation action is that the injury in a privacy action is mental distress from having been exposed to public view, while the injury in a defamation action is damage to one's reputation. *Dominguez*, 266 Kan. 926, Syl. ¶ 8. A claim for publicity given to private life is also an invasion of privacy tort and provides that liability may occur when one gives publicity to matters

20

concerning the private life of another of a kind highly offensive to a reasonable man. *Ali v. Douglas Cable Commc'ns*, 929 F. Supp. 1362, 1381 (D. Kan. 1996).

Privilege, along with truth, is a defense to both defamation and false light invasion of privacy actions. *Dominguez*, 266 Kan. 926, Syl. ¶ 8. Because both false light invasion of privacy and publicity given to private life invasion of privacy both require publicity, privilege should be a defense to both invasion of privacy torts as well. "Statements given in the course of litigtation [sic] which otherwise might serve as a basis for an action in slander or libel are privileged communications because of an overriding public interest in a free and independent judicial system, and this absolute privilege extends to parties to private litigation and to anything published relative to a matter at issue, whether it be said in pleadings, affidavits, depositions or from the witness stand in open court." *Clear Water Truck Co. v. M. Bruenger & Co.*, 214 Kan. 139, Syl. ¶ 4, 519 P.2d 682 (1974); *see, e.g., Hudkins v. City of Indianapolis*, No. 1:13-cv-01179-SEB-DML, 2015 WL 4664592, at * (S.D. Ind. Aug. 6, 2015) ("Absolute privilege provides judges, attorneys, parties and witnesses, in connection with a judicial proceeding, immunity from liability even if they publish defamatory material with an improper motive; this extends to statements, like a probable cause affidavit, made preliminary to a judicial proceeding.").

Because affidavits published in relation to a matter at issue in court are absolutely privileged communications, Shelly's claims for defamation, false light/invasion of privacy, and publicity given to private life fail.

**XII.    This Court Should Decline to Exercise Supplemental Jurisdiction.**

Should this Court dismiss the Aversmans' federal claims for relief (Counts I, II, III, and V against Nicholson), this Court should decline to exercise jurisdiction over the state-law claims for relief. Jurisdiction over these claims exists only by virtue of supplemental jurisdiction. Pursuant to

28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim when it has dismissed all claims over which it had original jurisdiction.

This Court's exercise of supplemental jurisdiction is discretionary. Because all federal claims in this case should be dismissed, this Court should dismiss the supplemental state law claims as well. *See, e.g., United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) ("[A] district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial.").

**Conclusion**

Christopher Nicholson investigated a suspected sexual relationship between a teacher and a student.  During the course of his investigation, the victim/former student, in response to a question of whether some sexual contact occurred prior to the victim's graduation, responded "Yeah."  When Nicholson confronted the teacher, Shelly Aversman, with the victim's statement that sexual contact occurred prior to the victim's graduation, she responded "maybe," "probably," "I guess so."  These statements alone are enough to establish probable cause.  Nicholson was simply doing his job when he believed the victim and Shelly Aversman when they admitted that a crime occurred, then forwarded his findings to the county attorney.  For all of the foregoing reasons, plaintiffs' claims should be dismissed as a matter of law.

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL
DEREK SCHMIDT


*s/ Anne Smith*
Shon D. Qualseth, KS No. 18369
Assistant Attorney General/Senior Trial Counsel
Anne Gepford Smith, KS No. 24636
Assistant Attorney General
Memorial Bldg., 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Tel:  (785) 291-3988
Fax:  (785) 296-6296
Email: shon.qualseth@ag.ks.gov
          anne.smith@ag.ks.gov
*Attorneys for Defendants*


**CERTIFICATE OF SERVICE**

This is to certify that on this 28th day of February, 2017, the above and foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system with electronic notification to:

Aaron M. House
House Law, LLC
4310 Madison Avenue, Suite 150
Kansas City, Missouri 64111
aaron@houselawkc.com
**Counsel for Plaintiff**

Andrew E. Werring
Werring Law Office, LLC
414 N. 5th Street
Atchison, Kansas 66002
andrew@werringlaw.com
**Counsel for Plaintiff**


*s/ Anne Smith*
Anne Gepford Smith