**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| SHELLY AVERSMAN,           )<br>MATTHEW AVERSMAN,       )<br>                                             )<br>             **Plaintiffs,**         )<br>                                             )<br>v.                                         )         Case No. 16-CV-2779-CM<br>                                             )<br>CHRISTOPHER NICHOLSON, *et al.*,  )<br>                                             )<br>             **Defendants.**        ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS WILLIAM SMITH**

Shelly and Matthew Aversman bring this action against the Kansas Bureau of Investigation (KBI), Special Agent Christopher M. Nicholson, and Special Agent in Charge William Smith. The Aversmans allege Smith failed to supervise Nicholson, who allegedly omitted information from and made misrepresentations in a probable cause affidavit that ultimately resulted in Shelly's arrest for unlawful sexual relations pursuant to K.S.A. 21-5512(a)(9).

As to Smith, the Aversmans bring claims under 42 U.S.C. § 1983 for supervisory liability (Count IV) and pendent loss of association (Count V), and under Kansas common law for negligent training, supervision, and adoption of policies (Count X).

Smith respectfully requests this Court to dismiss this action against him in its entirety.

**I.    Motion to Dismiss Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This Court does not accept

1

the Aversmans' legal conclusions as true, however; such conclusions must be supported by facts. *Iqbal*, 556 U.S. at 678.

## II. Qualified Immunity Standard

"'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Savannah v. Collins*, 547 Fed. Appx. 874, 876 (10th Cir. 2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)). In order to survive a motion to dismiss based on qualified immunity, the Aversmans "'must allege sufficient facts that show—when taken as true—the defendant plausibly violated his constitutional rights, which were clearly established at the time of the violation.'" *Savannah*, 547 Fed. Appx. at 876 (quoting *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012)).

"Once the qualified immunity defense is asserted, the plaintiff 'bears a heavy two-part burden' to show, first, 'the defendant's actions violated a constitutional or statutory right,' and, second, that the right was 'clearly established at the time of the conduct at issue.'" *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001). Because this protection is intended to shield officials even from pretrial burdens such as discovery, courts should resolve the question of law raised by a qualified immunity defense at the earliest stage possible. *Medina*, 252 F.3d at 1127-28.

## III. Section 1983 Does Not Authorize Respondeat Superior Liability

In Count IV, the Aversmans assert that Smith was a supervisor of Nicholson who knew or should have known that Nicholson "was preparing materially-misleading affidavits of probable

cause, conducting false arrests and maliciously prosecuting civilians, failing to properly investigate by ignoring exculpatory evidence, and depriving civilians of due process of law." (Doc. 6, at 16.) They further allege Smith "failed to adequately review the reports and records" prior to Nicholson's preparation of the probable cause affidavit and prior to its submission to the county attorney or district judge. (Doc. 6, at 16.) Smith also allegedly "failed to ensure that the PC Affidavit prepared by Defendant Agent Nicholson was supported by substantial competent evidence prior to its submission to the District Court Judge of Atchison County, Kansas." (Doc. 6, at 16.) Elsewhere in the Complaint, the Aversmans allege that the probable cause affidavit "was never reviewed by Defendant Agent Smith until after such documents had been prepared and filed with the District Court of Atchison County, Kansas." (Doc. 6, at 7.)

"'Section 1983 does not authorize liability under a theory of respondeat superior.'" *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013); *see also Iqbal*, 556 U.S. at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Plaintiffs here fail to show the requisite "affirmative link" between the supervisor and the constitutional violation, which requires more than mere knowledge of a subordinate's conduct. See *Schneider*, 717 F.3d at 767. As is set forth in Defendant Nicholson's Motion to Dismiss and Memorandum in Support (Docs. 16 and 17), no constitutional violation occurred. As such, Smith cannot be liable either, because no affirmative link can exist between the non-existent constitutional deprivation and the supervisor's personal participation. See *Harte v. Bd. of Comm'rs of Cnty. of Johnson Cnty.*, 151 F. Supp. 3d 1168, 1186 n.9 (D. Kan. 2015) ("In the absence of an underlying constitutional violation, plaintiffs' claims against any individual . . . who is alleged to have supervised, directed or set in motion the constitutional violation necessarily fail.").

Further, even if there were an underlying constitutional deprivation, the Aversmans still fail to plead the requisite affirmative link between the supervisor and the constitutional deprivation. "This notion is embodied in the three elements required to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation, and (3) state of mind." *Schneider*, 717 F.3d at 767.

The element of personal involvement is subject to a stricter liability standard after *Iqbal*. *Schneider*, 717 F.3d at 768 ("In *Iqbal*, the Supreme Court explained that '[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"). Here, the Aversmans cannot meet that standard. Count IV is brought under the title of "supervisory liability." The allegations regarding Smith are that he knew or should have known of a subordinate's conduct, which clearly fails under Tenth Circuit precedent. Indeed, the Aversmans' own allegations that Smith never reviewed the probable cause affidavit before it was filed with the court are fatal to their claim: such allegations clearly fail to establish that Smith was directly involved or participated in or approved of the acquisition of the arrest warrant. *See, e.g., Arceo v. City of Junction City, Kan.*, 182 F. Supp. 2d 1062, 1091 (D. Kan. 2002). Such allegations, even if true, amount at best to mere negligence, which is not enough. Rather, supervisory liability requires deliberate indifference on the part of the supervisor. *See, e.g., Estate of Fuentes v. Thomas*, 107 F. Supp. 2d 1288, 1301 (D. Kan. 2000).

In *Arceo*, a pre-*Iqbal* case, the Court found that the uncontroverted facts indicated that the chief of police supervisor had no direct involvement in the procurement of an arrest warrant or in the actual arrest. 182 F. Supp. 2d at 1091. "In fact, Warren did not even review Clark's reports prior to their delivery to the prosecutor." *Arceo*, 182 F. Supp. 2d at 1091. There, the Court found

that the plaintiff failed to establish that the supervisor personally procured his arrest or participated in or approved of the acquisition of the arrest warrant. *Arceo*, 182 F. Supp. 2d at 1091. Because the supervisor did not personally take positive action to violate the plaintiff's constitutional right to be free from false arrest and did not personally take affirmative steps to procure criminal proceedings, a required element of his malicious prosecution claim, the Court found the plaintiff failed to overcome the supervisor's assertion of qualified immunity with respect to the false arrest/imprisonment and malicious prosecution claims. *Arceo*, 182 F. Supp. 2d at 1091.

Like in *Arceo*, the allegations here, even when taken as true, state that Smith never reviewed the probable cause affidavit prior to its submission to the county attorney and/or district judge. Such allegations cannot survive Smith's assertion of qualified immunity.

Further, the Aversmans do not make sufficient allegations to meet the second element, causation. "'A plaintiff [must] establish the "requisite causal connection" by showing "the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights."'" *Schneider*, 717 F.3d at 768. The Aversmans' allegations fail to establish the requisite causation here. The Aversmans' attempts to bring claims against Smith for violations of § 1983 under a theory of respondeat superior should be dismissed.

### IV. Matthew Has No Constitutional Right to Spousal Consortium, and No Intent to Interfere with his Relationship Existed.

In Count V, Matthew alleges Smith, along with Nicholson, undermined his "First and Fourteenth Amendment and state law liberty interest in preserving the integrity and stability of the family relationship from intervention by the state without due process of law." (Doc. 6, at 17.) He titles the claim as a "Pendent loss of Association Claim" and through it seeks damages for loss of consortium and loss of household services, among other things. (Doc. 6, at 17.) Matthew's

5

derivative claim is precluded by Tenth Circuit precedent, however.

"Section 1983 does not generally impose liability for the violation of a duty of care arising solely out of tort law." *Winton v. Bd. of Comm'rs of Tulsa Cnty., Okla.*, 88 F. Supp. 2d 1247, 1254 (N.D. Okla. 2000). "It is a 'well-settled principle that a section 1983 claim must be based upon the violation of [a] plaintiff's personal rights, and not the rights of someone else.'" *Winton*, 88 F. Supp. 2d at 1254. There is no constitutional right to spousal consortium. *Winton*, 88 F. Supp. 2d at 1254. Deprivations of the lesser services comprehended within "consortium" are not deprivations of liberty within the restricted constitutional meaning of the term. *Winton*, 88 F. Supp. 2d at 1254. In order to allege a § 1983 claim, Matthew must demonstrate that he personally suffered the deprivation of a constitutional right he individually possesses. *Winton*, 88 F. Supp. 2d at 1254. Matthew's claim appears to be based on the violation of his wife's individual rights. To such extent, it is barred.

To the extent Matthew's claim is liberally interpreted to be akin to a claim alleging deprivation of his right to familial association with Shelly, his spouse, it still fails, and Smith is entitled to qualified immunity on Matthew's claim. (Doc. 6, at 17.)

"The right of intimate association is not absolute." *Griffin v. Strong*, 983 F.2d 1544, 1549 (10th Cir. 1993). The right to familial association "is properly based on the 'concept of liberty in the Fourteenth Amendment.'" *Griffin*, 983 F.2d at 1547. "In classic fourteenth amendment liberty analysis, a determination that a party's constitutional rights have been violated requires 'a balancing [of] liberty interests against the relevant state interests.'" *Griffin*, 983 F.2d at 1547. To determine whether Matthew's familial association right has been violated as alleged, this Court weighs the state's interests in investigating reports of unlawful sexual relations such as relations between a teacher and a student, which is the interest served by Smith's alleged conduct in failing

to supervise Nicholson in his investigation of the claims against Shelly, and Matthew's interests in his familial right of association. *Griffin*, 983 F.2d at 1547. In weighing these interests, this Court looks to determine whether Smith's alleged conduct—or more accurately here, his alleged lack of conduct—constituted an undue burden on Matthew's associational right.

In *Lowery v. County of Riley*, 522 F.3d 1086, 1092 (10th Cir. 2008), the Tenth Circuit noted it has held that "'an allegation of *intent* to interfere with a particular relationship protected by the freedom of familial association is required to state a claim under section 1983.'" Notably, "[n]ot every statement or act that *results* in an interference with the rights of familial association is actionable. Rather, to rise to the level of a constitutional claim, the defendant must *direct* his or her statements or conduct at the intimate relationship with knowledge that the statements or conduct will adversely affect that relationship." *Griffin*, 983 F.2d at 1548 (emphasis in original); *see also Lowery*, 522 F.3d at 1092.

Here, Matthew alleges no facts, much less even a conclusory allegation, to support that Smith's failure to review the probable cause affidavit prior to its submission to the county attorney and/or district court was directed at Matthew's familial relationship with knowledge that the statements or conduct would adversely affect that relationship. Thus, Matthew alleges no facts that Smith intended to interfere with his relationship with Shelly, a requisite under Tenth Circuit precedent in order to state a claim. Because he has failed to allege such necessary facts, this Court must dismiss his claim in Count V.

Even further, were this Court to balance Matthew's allegations with the important state interests at play here, Smith is entitled to qualified immunity. In *Griffin*, a wife sued a police officer under 42 U.S.C. § 1983 alleging deprivation of her right to familial association arising out of the investigation and arrest of her husband on charges of rape and sexual abuse of a child. 983 F.2d at

1545. There, the record supported the wife's allegation that the officer told the wife, falsely, that her husband had confessed to child abuse and would be provided an attorney when he got to jail. *Griffin*, 983 F.2d at 1548. The wife also testified that the officer questioned her morals when she did not believe her husband committed child abuse. *Griffin*, 983 F.2d at 1548. The officer also interviewed the husband in jail; during the interview, the husband confessed to abusing several young girls. *Griffin*, 983 F.2d at 1548. The husband testified that the officer, after asking if the husband had heard from his wife, said "'the reason she feels this way is because you won't confess to what you've done and get the help you need.'" *Griffin*, 983 F.2d at 1548. After the husband's arrest, the wife discussed her plans to move to another state while visiting the officer at his office. *Griffin*, 983 F.2d at 1548. The wife testified that the officer told her "'to go ahead and start my life over. It was a good idea.'" *Griffin*, 983 F.2d at 1548. The wife also said the officer used her against her husband. *Griffin*, 983 F.2d at 1548.

Ultimately, the Tenth Circuit found "no reasonable juror, when confronted with balancing the interests on the record before us under the appropriate standard, could determine that [the wife's] associational rights were unduly violated." *Griffin*, 983 F.2d at 1549. Noting that both the wife and husband consensually talked to the officer, the court stated, "Consensual interviews are less likely to infringe on familial relationships because the parties can always decline to talk." *Griffin*, 983 F.2d at 1548. Additionally, the court found no evidence or allegation that the conduct going to the wife's claims for deprivation of her familial right of association involved physical coercion or conduct that shocked the conscience. *Griffin*, 983 F.2d at 1548-49. While the court noted that the officer apparently lied to the wife by telling her that her husband had confessed to the crimes with which he was being charged, the court concluded on the balance that the infringement of familial rights of association was slight. *Griffin*, 983 F.2d at 1549.

8

Smith's involvement is even more tangential than the facts of *Griffin*: Smith allegedly failed to review the probable cause affidavit as the supervisor of the agent who did prepare the affidavit. Nothing in Matthew's allegations establishes any intent or direction of Smith's alleged inaction at the intimate relationship. Matthew's allegations simply fail to rise to the level of a constitutional claim. Even if they did, Smith is entitled to qualified immunity. This Court should dismiss Matthew's claim against Smith.

### V. The Public Duty Doctrine Bars Shelly's Negligent Training, Supervision, and Adoption of Policies Claim Against Smith.

In her negligent training, supervision, and adoption of policies claim (Count X), Shelly alleges Smith had a duty to properly train, supervise, and provide adequate policies to prevent Nicholson's conduct. (Doc. 6, at 19.) "Actionable negligence must be based on a duty owed the plaintiff by the defendant." *Robertson v. City of Topeka*, 231 Kan. 358, 363, 644 P.2d 458 (1982). Such a claim fails here, however, due to the lack of such a duty.

> "When a negligence claim is asserted against a governmental agency, the court must consider the public duty doctrine. That doctrine establishes the general principle that a governmental agency owes duties to the public at large rather than to individuals. Under this doctrine, the fact a governmental entity owes a legal duty to the public at large does not establish a basis for an individual to claim the agency owed a legal duty to him or her personally. No duty exists unless it is established that the agency owed a special duty to the injured party." *Lamb v. State*, 33 Kan. App. 2d 843, Syl. ¶ 4, 109 P.3d 1265 (2005).

"The public duty doctrine applies to policing functions." *Lamb*, 33 Kan. App. 2d 843, Syl. ¶ 5. As a law enforcement officer, then, Smith's duty is owed to the public at large. *Robertson*, 231 Kan. at 363 (duty to preserve the peace owed to public at large); *Lamb*, 33 Kan. App. 2d at 847; see *Allen v. Bd. of Comm'rs of County of Wyandotte*, 773 F. Supp. 1442, 1453 (D. Kan. 1991) ("Law enforcement officers owe a duty to the public at large to use reasonable and ordinary care and diligence in exercising their duties, to use their best judgment, and to exercise that reasonable

degree of learning, skill and experience which is ordinarily possessed by other law enforcement officers in the same or similar locations."); *see also McCormick v. Bd. of County Comm'rs of Shawnee Cnty.*, 272 Kan. 627, 648, 35 P.3d 815 (2001) (law enforcement officials owe legal duty only to the public at large). Specifically, any duty owed by Smith to train or supervise Nicholson is a duty owed to the public at large. *Skiles v. County of Rawlins*, 468 F. Supp. 2d 1311, 1319 (D. Kan. 2007) ("[A]ny duty owed to train and supervise employee is owed to the public at large.").

"Absent some special relationship with or specific duty owed an individual, liability will not lie for damages." *Robertson*, 231 Kan. at 363; *see also McCormick*, 272 Kan. at 648; *Burney v. Kan. Dep't of Soc. & Rehab. Servs.*, 23 Kan. App. 2d 394, 399, 931 P.2d 26 (1997) (finding relationship between public agency and alleged child abuser does not fall within ambit of special relationships). Smith's duty is not owed to Shelly as a particular individual. *Robertson*, 231 Kan. at 363. Shelly fails to allege any special relationship or specific duty owed beyond one owed to the public at large, nor does such a special relationship or specific duty exist in the case at bar. As such, Shelly's negligent training, supervision, and adoption of policies claim fails.

## VI. KTCA Immunities Bar Shelly's Negligent Training, Supervision, and Adoption of Policies Claim Against Smith.

Shelly brings a state-law claim for negligent training, supervision, and adoption of policies (Count X) against Smith, but such a claim is also barred by immunities under the Kansas Tort Claims Act (KTCA).

The KTCA, K.S.A. 75-6101 et seq., "provides that a governmental entity can be found liable for the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment only if (1) a private person could be liable under the same circumstances and (2) no statutory exception to liability applies." *Keiswetter v. State*, 304 Kan. 362, Syl. ¶ 2, 373 P.3d 803 (2016); *see also* K.S.A. 2016 Supp. 75-6103(a). While officers who act maliciously or

wantonly fail to exercise the care and diligence required of officers are not covered within the KTCA, the totality of the circumstances is considered in determining whether an officer's conduct is protected by the KTCA. *Allen*, 773 F. Supp. at 1453. Recently, in *Keiswetter*, the Kansas Supreme Court stressed that immunity is an immunity from suit and should be resolved at the earliest stage possible in litigation. *Keiswetter*, 304 Kan. at 367.

Exclusions from the KTCA provide immunity here. *Carpenter v. Johnson*, 231 Kan. 783, 786, 649 P.2d 400 (1982) ("An exception written into a tort claims act constitutes a jurisdictional bar, if established."). As such, even assuming some sort of duty existed here, immunity disposes of this case. *Keiswetter*, 304 Kan. at 367 ("for the sake of a straightforward review we will assume, but not decide, that a duty—here, to Keiswetter—existed. . . . So we need only determine whether the State's claimed statutory exception to liability, *i.e.*, the police protection exception, applies. If the exception applies, it disposes of this case."). Subsections (e) and (n) of K.S.A. 2016 Supp. 75-6104 are particularly relevant here.

### A. Subsection (e): Discretionary Function Immunity

K.S.A. 2016 Supp. 75-6104(e) provides that a governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages from "any claim based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." The test for applying the discretionary function exception looks to the nature and quality of the discretion exercised. *McCormick*, 272 Kan. at 645-46.

> "Discretion implies the exercise of discriminating judgment within the bounds of reason. [Citation omitted.] It involves the choice of exercising of the will, of determination made between competing and sometimes conflicting considerations. Discretion imparts that a choice of action is determined, and that action should be

taken with reason and good conscience in the interest of protecting the rights of all parties and serving the ends of justice." *Allen*, 773 F. Supp. at 1454.

Smith's administrative decisions regarding how much training or supervision over Nicholson was required, as well as whether or what policies to adopt exhibit the hallmarks of discretion. Courts in this district have previously found decisions to terminate an employee and failure to properly supervise or control an employee fall within the discretionary function exception of the KTCA. *Haehn v. City of Hoisington*, 702 F. Supp. 1526, 1533 (D. Kan. 1988). Because Smith exercised a discretionary function, this claim against him is barred.

### B. Subsection (n): Police Protection Immunity

K.S.A. 2016 Supp. 75-6104(n) provides that a governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages from "failure to provide, or the method of providing, police or fire protection." This section is aimed at basic matters such as the type and number of police cars, the number of personnel required, and the selection of equipment. *Allen*, 773 F. Supp. at 1456.

In *Allen*, much like Shelly here, the plaintiff alleged a sheriff's department was negligent in its provision of training and supervision to deputies; the plaintiff also alleged the department failed to adopt policies, procedures, rules, guidelines, and regulations which would have reduced the likelihood of or prevented the occurrence of her alleged unlawful detainment, imprisonment, and strip search. 773 F. Supp. at 1455. Noting that there was no question that the department was providing police protection by taking the plaintiff into its custody, the Court stated "the provision of training and supervision as well as the adoption of policies and procedures are covered by the police protection exception to the Kansas Tort Claims Act." *Allen*, 773 F. Supp. at 1456; *see Sigg v. Bd. of Cnty. Comm'rs of Allen Cnty.*, No. 98-2154-JWL, 1999 WL 588186, at *8 (D. Kan. July 30, 1999) ("Courts in the District of Kansas have often predicted that the Kansas Supreme Court

would hold that claims against municipalities for negligent training, supervision, or retention of law enforcement officers fall within the police function exception."). Smith cannot be liable on Shelly's claim for negligent training, supervision, and adoption of policies because of police protection immunity under the KTCA, and this Court should dismiss this claim.

### VII.   This Court Should Decline to Exercise Supplemental Jurisdiction.

Should this Court dismiss the Aversmans' federal claims for relief (Counts IV and V against Smith), this Court should decline to exercise jurisdiction over the state-law claims for relief. Jurisdiction over these claims exists only by virtue of supplemental jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim when it has dismissed all claims over which it had original jurisdiction.

This Court's exercise of supplemental jurisdiction is discretionary. Because all federal claims in this case should be dismissed, this Court should dismiss the supplemental state law claims as well. *See, e.g., United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) ("[A] district court should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial.").

### VIII.   Conclusion

Smith, as a supervisor, trusted a subordinate agent to prepare a probable cause affidavit after an investigation into a suspected sexual relationship between a teacher and a student. His non-review of the affidavit prior to its submission to the county attorney and district judge is simply not enough to establish liability to the suspect or her husband on any of their claims. For all of the foregoing reasons, plaintiffs' claims should be dismissed as a matter of law.

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL
DEREK SCHMIDT


*s/ Anne Smith*
Shon D. Qualseth, KS No. 18369
Assistant Attorney General/Senior Trial Counsel
Anne Gepford Smith, KS No. 24636
Assistant Attorney General
Memorial Bldg., 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Tel:  (785) 291-3988
Fax:  (785) 296-6296
Email: shon.qualseth@ag.ks.gov
          anne.smith@ag.ks.gov
*Attorneys for Defendants*


**CERTIFICATE OF SERVICE**

This is to certify that on this 14th day of March, 2017, the above and foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system with electronic notification to:

Aaron M. House
House Law, LLC
4310 Madison Avenue, Suite 150
Kansas City, Missouri 64111
aaron@houselawkc.com
*Counsel for Plaintiff*

Andrew E. Werring
Werring Law Office, LLC
414 N. 5th Street
Atchison, Kansas 66002
andrew@werringlaw.com
*Counsel for Plaintiff*


*s/ Anne Smith*
Anne Gepford Smith